# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RICHARD TAYLOR, | |
| Plaintiff, | Case No. 16 cv 5210 |
| v. | Judge John Robert Blakey |
| PSC PROFESSIONAL SECURITY CONSULTANTS and HAWTHORN L.P., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Richard Taylor filed this complaint against Professional Security Consultants ("PSC") and Hawthorn Mall ("Hawthorn") alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C § 1981. The case is before the Court on Defendants' motions to dismiss Plaintiff's amended complaint [40], [42]. For the reasons explained below, the motions are denied.

I.  Background & Procedural History

PSC contracts with Hawthorn to provide security services to Hawthorn's locations. Amended Complaint [38], ¶ 8. Plaintiff is employed by PSC as a security guard, and worked at Hawthorn Mall from May 2015 to December 2015. *Id.*, ¶ 21. He was the only black security guard employed by PSC and working at Hawthorne Mall during this time. *Id.* As a security guard, Plaintiff "ensured the safety and well-being of patrons and tenants of Hawthorn Mall." *Id.* at ¶ 22.

During the month of December 2015, Hawthorn Mall's fire alarm system was malfunctioning, though Plaintiff was not advised of this fact. *Id.* at ¶ 26;

Hawthorn's Memorandum in Support [41], p. 2. On December 13, 2015, the fire alarm activated, repeating the phrase "Fire! Please exit the mall." Unsure of whether to instruct the tenants and patrons to exit Hawthorn Mall, Plaintiff attempted to contact Vionnia (last name unknown), a dispatch operator at PSC. [38], at ¶¶ 28-9. As a dispatch operator, Vionnia would have known whether the Hawthorn Mall alarm was false; however, Vionnia did not respond to Plaintiff's call. *Id.* at ¶¶ 30, 34; [41], p. 2. Plaintiff then contacted Brian (last name unknown), a PSC supervisor, and asked how to properly respond to the fire alarm. [38], ¶ 30; [41], p. 2. Brian directed Plaintiff to have the tenants and patrons exit the mall, and Plaintiff followed this direction. [38] ¶¶ 30-31; [41], p. 2. This incident occurred during Hawthorn Mall's prime Christmas business hours. [38], ¶ 40; [41], p. 3. The fire alarm turned out to be false. [41], p. 2.

The next day, December 14, 2015, Plaintiff was interrogated by Lucy Garcia, PSC's Assistant Director of Security, and Nick (last name unknown), also with PSC. [38], ¶ 32; [41], p. 2–3. Plaintiff asserts that during this interrogation process, he was asked "impeding, intruding, dehumanizing, insulting questions" and informed that he should not have told the tenants and patrons to leave the mall's premises, despite the alarm's warnings. [38], ¶ 33. Despite the interrogation, Plaintiff was not provided with any written or verbal disciplinary actions, either when questioned or afterward. *Id.*

On December 18, 2015, Plaintiff was interrogated a second time. Lucy Garcia and Nick asked Plaintiff the same kinds of questions they had asked during the

first interrogation, and, once again, Plaintiff received no formal written or verbal disciplinary action. *Id.* at ¶ 35.

On December 23, 2015, Lucy Garcia informed Plaintiff that tenants of the mall had complained about him to Hawthorn's Property Manager, Jeff Rutzen, for forcing the evacuation of the mall on a false alarm. *Id.* at ¶ 40. Rutzen advised that because of these complaints, he was "displeased with [Plaintiff] and did not want him to work with the general public." *Id.* at ¶ 36. Plaintiff was told that Rutzen now wanted him "to work in isolation with minimum contact with the public and Hawthorn's tenants." *Id.* Plaintiff was then informed that he was being given an ultimatum: he could either resign, or he could relocate to another mall. [38], ¶ 37. He opted to relocate. Plaintiff was never provided with documentation of either the disciplinary proceedings or the complaints against him by Hawthorn's tenants or personnel. [38], ¶ 39.

During this time, Plaintiff also noticed that a new African-American male security guard was being trained at the Hawthorn Mall. *Id.* at ¶ 36.

Plaintiff accepted "PSC's offer to relocate to another mall in Skokie, Illinois, but viewed this as punishment." *Id.* at ¶ 41. Plaintiff represents that as a result of the transfer, his work commute is now 40-miles longer, and he is now required to work outdoors in the summer with continuous walking; he now has additional commuting expenses and at the same time, he has decreased work hours. *Id.* at ¶ 44. By accepting the transfer, Plaintiff asserts that he has given up "the

3

opportunity to earn regular income," though he does not explain exactly what he means by this allegation. *Id.* at ¶ 43.

Plaintiff alleges that the Defendants treated him differently from other similarly situated individuals. Plaintiff points to PSC's decision to interrogate him twice, which he claims deviates from PSC's standard practice of investigating employees only once after incidents. *Id.* at ¶ 56. Additionally, Plaintiff argues that PSC's failure to provide him with any formal written or verbal disciplinary actions deviates from the Discipline and Termination policies outlined in PSC's employee handbook. *Id.* at ¶¶ 58-9. Further, Plaintiff alleges that "[o]ther similarly situated individuals were given directions on how to respond to the fire alarm and not provided with an ultimatum to relocate or to resign," and that he, "the only African-American security guard, working at Hawthorn[,] was the only guard not provided instructions on how to handle the alarm." *Id.* at ¶ 67(d). Ultimately, Plaintiff believes he was treated differently from other similarly situated individuals because of his race and not his job performance. *Id.* at ¶ 42; [41], p. 3.

On January 29, 2016, Plaintiff filed an EEOC Charge of Discrimination against PSC. Motion to Dismiss [42], p. 1. On February 17, 2016, the EEOC issued a Notice of Right to Sue letter. *Id.* Plaintiff initiated this lawsuit on May 13, 2016, by submitting a complaint and an application seeking leave to proceed with the case *in forma pauperis*. *See* [1], [3]. On May 16, 2016, the Court denied Plaintiff's IFP application and gave Plaintiff until May 31, 2016 to pay the required filing fee. *See* [5]. On May 26, 2016, Plaintiff paid the filing fee, and the complaint was accepted

4

by the Court. *See* [7], [8], [9]. Both Defendants subsequently moved to dismiss the complaint. *See* [15], [22]. Thereafter, Plaintiff filed an amended complaint [38], and Defendants renewed their motions to dismiss [40], [42]. These latter motions are presently before the Court.

II.     Legal Standard

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). A complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must provide the defendant with "fair notice" of what the claim is "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). A motion to dismiss tests the sufficiency of a complaint, not the merits of a case. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) quoting *Twombly*, 550 U.S. at 570. That is, the allegations must raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs.. Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct

5

alleged." *Iqbal*, 556 U.S. at 678 citing *Twombly*, 550 U.S. at 556. The "amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged," but "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Limestone Dev. Corp. v. Vill. Of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

In evaluating the complaint, the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of Plaintiff. *Iqbal*, 556 U.S. at 678; *Alamo v. Bliss*, 864 F.3d 541, 548–49 (7th Cir. 2017). The Court need not, however, accept legal conclusions or conclusory factual allegations. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

III. Discussion & Analysis

Defendant PSC has moved to dismiss Plaintiff's complaint for failure to state a claim and also argues that the complaint is untimely. Defendant Hawthorn has moved to dismiss Plaintiff's complaint for failure to state a claim arguing that Plaintiff: fails to allege a cognizable "adverse employment action"; has pleaded himself out of court by including facts in his complaint showing that Hawthorn's alleged actions were motivated by Plaintiff's performance and not his race; and alleges facts showing that PSC, not Hawthorn, is responsible for any discriminatory conduct related to the disciplinary proceedings. The Court addresses each argument below.

alleged." *Iqbal*, 556 U.S. at 678 citing *Twombly*, 550 U.S. at 556. The "amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged," but "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Limestone Dev. Corp. v. Vill. Of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

In evaluating the complaint, the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of Plaintiff. *Iqbal*, 556 U.S. at 678; *Alamo v. Bliss*, 864 F.3d 541, 548–49 (7th Cir. 2017). The Court need not, however, accept legal conclusions or conclusory factual allegations. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

III. Discussion & Analysis

Defendant PSC has moved to dismiss Plaintiff's complaint for failure to state a claim and also argues that the complaint is untimely. Defendant Hawthorn has moved to dismiss Plaintiff's complaint for failure to state a claim arguing that Plaintiff: fails to allege a cognizable "adverse employment action"; has pleaded himself out of court by including facts in his complaint showing that Hawthorn's alleged actions were motivated by Plaintiff's performance and not his race; and alleges facts showing that PSC, not Hawthorn, is responsible for any discriminatory conduct related to the disciplinary proceedings. The Court addresses each argument below.

A. PSC's Motion to Dismiss

1. Timeliness Challenge

Initially, PSC seeks dismissal of Plaintiff's complaint on the grounds that it was filed more than 90 days after plaintiff presumably received the EEOC Dismissal and Notice of Right to sue letter. [42], p. 2. The Court rejects this argument.

Under 42 U.S.C. § 2000e–5(f)(1), a plaintiff is required to file a civil action within 90 days of receiving the EEOC's Notice of Right to Sue letter. A "civil action is commenced by filing a complaint with the court," Fed.R.Civ.P. 3, and a complaint is filed when the complaint is submitted to the clerk, accompanied by the appropriate filing fee. Local Rule 3.3. Where the plaintiff is unable to pay the filing fee, he may submit a petition to the court seeking leave to proceed *in forma pauperis* ("IFP"), and the court "may authorize the commencement" of the suit "without prepayment of fees and costs." 28 U.S.C. § 1915(a). If the judge grants the IFP application, the complaint is deemed filed either on the date of the judge's order, . . . or . . . as of the time the complaint was received by the clerk." Local Rule 3.3. Where the judge rejects an IFP application, the complaint is deemed "filed" when the filing fee is paid. *Williams-Guice v. Board of Education of the City of Chicago*, 45 F.3d 161, 162 (7th Cir. 1995); *Robinson v. America's Best Contacts and Eyeglasses*, 876 F.2d 596, 597 (7th Cir. 1989).

For purposes of the statute of limitations, when an IFP application is submitted to the clerk, the court will temporarily suspend or toll the limitations

7

period while it determines whether the application will be granted or denied; the limitations period then resumes running upon the date the plaintiff receives notification of the denial. *Williams-Guice*, 45 F.3d at 162. The court may also grant a complainant an extension of time to pay the filing fee; if it does, a complaint may be timely even though the filing fee was paid beyond the 90-day statutory period. *See Robinson* 876 F.2d at 598. Further, in absence of a court order granting an extension of time in which to pay a filing fee, a complaint may be deemed "timely" filed if the filing fee is paid within 15 days of the notification of the denial of the IFP application. Local Rule 3.3(e).

Here, Plaintiff filed an EEOC Charge of Discrimination against PSC on January 29, 2016. [38], ¶ 12; [42], p. 1. On February 17, 2016, the EEOC issued a Notice of Right to Sue letter. [38], ¶ 12. On May 13, 2016, 86 days after receiving the EEOC Notice of Right to Sue Letter, Plaintiff submitted his complaint of employment discrimination, along with an application seeking leave to proceed *in forma pauperis*. *See* [1], [3]. The Court considered the application for three days, and the limitations period was tolled during this time. *See Williams-Guice*, 45 F.3d 161, 162 (7th Cir.1995). On May 16, 2016, the Court denied Plaintiff's application and gave Plaintiff until May 31, 2016 to pay the required filing fee. *See* [5]. Plaintiff paid the filing fee on May 26, 2016, within the timeframe set by the Court. *See* [7]. His complaint was filed on the docket that same day. *See* [9]. Because Plaintiff paid the filing fee within the time granted by the Court, the complaint is

timely, even if Plaintiff paid the filing fee more than 90 days after receiving the Right to Sue Letter. See *Robinson* 876 F.2d at 598.

### 2. PSC's Challenge to the Sufficiency of Plaintiff's Allegations

Defendant PSC has moved to dismiss on the grounds that "[P]laintiff's amended complaint fails to provide allegations that raise a right to relief above the speculative level." [42], p. 6. PSC argues that "[P]laintiff failed to plead any facts that create a causal link between the alleged adverse employment action taken against him and his being an African American." [42], p.7.

To survive a motion to dismiss under Rule 12(b)(6), "the complaint need contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Huri v. Office of the Chief Judge of the Circuit Court of Cook County*, 804 F.3d 826, 832 (7th Cir. 2015) citing Fed.R.Civ.P. 8(a)(2). This means that "[s]pecific facts are unnecessary, but the complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests." *Huri*, 804 F.3d at 832 citing *Olson v. Champaign County*, 784 F.3d 1093, 1098 (7th Cir. 2015).

To state a claim for race discrimination under Title VII of the Civil Rights Act of 1964 and 42 U.S.C § 1981, a plaintiff must plausibly allege in his complaint that he was subjected to intentional discrimination based upon his race; these allegations can be made quite generally. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). To prevail on his employment discrimination claim, Plaintiff must present evidence that "would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the

discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Additionally, the "[e]vidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Id.*

The Seventh Circuit has set an exceptionally low bar to the pleading of causation in racial discrimination cases. *See Tamayo*, 526 F.3d at 1084 (Acknowledging that a complaint must contain "something more than a general recitation of the elements of the claim," and reaffirming "the minimal pleading standard for simple claims of race or sex discrimination."); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 410 (7th Cir. 2010) ("The Court rejected a rule that the Second Circuit had created which required "heightened pleading" in Title VII cases."). At this stage of pleading, the link between the protected class (here, African Americans) and the discharge or other adverse employment action "need not be set out with plausible factual allegations[;] instead a plaintiff can rely on conclusory allegations that the first and second are linked by racial animus." *Cole v. Bd. Of Trustee of N. Illinois Univ.*, 38 F. Supp. 3d 925, 931 (N.D. III. 2014) (citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013); *Carlson v. CSX Transp., Inc.*, 758 F.3d 819 (7th Cir. 2014); *Tamayo*, 526 F.3d at 1084; *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 782 (7th Cir. 2007)). As explained above, when analyzing the sufficiency of the complaint, this Court must construe the allegations in the light most favorable to the plaintiff, accept well-pleaded facts

10

as true, and draw all inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678; *Alamo v. Bliss*, 864 F.3d 541, 548–49 (7th Cir. 2017).

Here, Plaintiff asserts that the defendants did not provide him with instructions on how to handle the fire alarm while other similarly situated individuals were given instructions. 38 at ¶ 67(d). He also claims that defendants' decision to interrogate him twice and to not provide him with any formal written or verbal disciplinary actions deviates from PSC's standard practice of investigating employee-related incidents. *Id.* at ¶ 56, 58–9. Plaintiff also claims that he was the only security guard that PSC made relocate or resign. *Id.* at ¶ 67(c). Plaintiff argues that the defendants treated him differently from other similarly situated individuals not because of his job performance, but rather because he is African-American. *Id.* at ¶ 42; [41], p. 3.

Plaintiff alleges that he is "an African American male, the only black security guard employed by PSC and working at Hawthorn Mall from May 2015 to December 2015." Amended Complaint [38], ¶ 21. Plaintiff alleges that he was forced to accept a transfer to another mall, which he viewed as a punishment because he had a much longer commute, harsher working conditions, increased expenses and decreased working hours. *Id.*, ¶¶ 37, 41, 43-44. Finally, he alleges that he was investigated, disciplined and punished, and that he was "treated differently from other similarly situated individuals because of his race." *Id.*, ¶¶ 33, 35-42. In short, Plaintiff plausibly alleges that he is a member of a protected class; that Defendants took an adverse employment action against him; and that

11

Defendants took the adverse employment action because of his membership in the protected class. At this stage of the proceedings, such allegations are sufficient. *See Cole*, 38 F. Supp. 3d at 931 (The link between the protected class and the adverse employment action "need not to be set out with plausible factual allegations[;] instead a plaintiff can rely on conclusory allegations that the first and second are linked by racial animus."). In short, the amended complaint sufficiently states a claim of employment discrimination under both Title VII and § 1981.

B.  Hawthorn's Motion to Dismiss

In its motion, Hawthorn makes a general challenge to the sufficiency of Plaintiff's complaint, arguing that the allegations "are irrelevant, and offer no factual support capable of raising the Plaintiff's claim beyond the realm of mere speculation." [41], p. 6. The Court disagrees for the same reasons explained above. Hawthorn also argues that Plaintiff has failed to allege an adverse employment action and instead alleged a non-discriminatory motive for any adverse action taken. Finally, Hawthorn argues that Plaintiff has not alleged any wrongdoing on its part.

1.  Adverse Employment Action

Hawthorn asserts that Plaintiff has "failed to allege that Hawthorn took any adverse employment actions against him . . . ." [41], p. 7. The Seventh Circuit has held that there is a "minimal pleading standard" for claims of race discrimination. *Tamayo*, 526 F.3d at 1084. A plaintiff need only allege that the employer instituted a specified adverse employment action against him on the basis of his race. *Id.* "An

12

adverse employment action is one that significantly alters the terms and conditions of the employee's job." *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004). For the purposes of the federal antidiscrimination statutes, adverse employment actions "generally fall into three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453–54 (7th Cir. 2011). A "significant financial impact" or a "'significant' change in benefits," such as a reduction in pay, may constitute an adverse employment action. *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 980 (7th Cir. 2014) citing *Lewis v. City of Chi.*, 496 F.3d 645, 653 (7th Cir. 2007); *see also Washington v. Illinois Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005). But a "purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996). Nor does a transfer that merely lengthens an employee's commute. *Griffin*, 356 F.3d at 829.

Here, Plaintiff alleges that, after the fire alarm incident, Defendants told him he had to either resign or relocate to another mall. [38], ¶ 37. Plaintiff decided to relocate to another mall. *Id.* at ¶ 41. If purely lateral, this transfer would not rise to the level of a materially adverse employment action. *See Williams*, 85 F.3d at 274. Moreover, if the only effect that Plaintiff experienced due to this transfer was

13

a longer commute, this transfer would not rise to the level of a materially adverse employment action. *See Griffin*, 356 F.3d at 829. But Plaintiff also alleges that, because of the transfer, he has harsher working conditions, increased expenses and decreased hours; he also alleges that the move forced him to give up "the opportunity to earn regular income." [38] at ¶ 43-44. Taken together, these allegations may fairly be read to claim that the transfer significantly altered the terms and conditions of Plaintiff's employment. Discovery may reveal that this is not the case. But at this stage, the Court cannot say Plaintiff can prove no set of facts entitling him to relief.

2. Allegations regarding the Reason for the Transfer

Hawthorn next argues that Plaintiff has pleaded himself out of court by establishing in his allegations that the basis for any adverse employment action was not race, but Plaintiff's performance. Hawthorn claims that Plaintiff was transferred, not because he is black, but "based on a negative evaluation of the Plaintiff's performance and the impact it had on Hawthorn's business." [41], p. 5. A party may plead himself out of court by "pleading facts that show that he has no legal claim" when bringing allegations of employment discrimination under Title VII of the Civil Rights Act of 1964 and 42 U.S.C § 1981. *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). This occurs when the complaint includes "facts that establish an impenetrable defense to its claims." *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009) quoting *Tamayo*, 526 F.3d at 1086. When such facts are pled, "it would be necessary to contradict the complaint in order to prevail on

the merits" and the claim necessarily fails. *Tamayo*, 526 F.3d at 1086 quoting *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006).

Allegations in an employment discrimination complaint that suggest alternative, race-neutral motives for a defendant's actions, do not necessarily contradict race-based discrimination. *See Tamayo* 526 F.3d at 1086. To succeed on a claim for employment discrimination based on race, a plaintiff need not show that race was the exclusive reason for the defendant's actions; rather, a plaintiff need only show that race was a motivating factor. *Id.* citing *Hossack v. Floor Covering Assocs. of Joliet*, 492 F.3d 853, 860 (7th Cir. 2007); *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000).

Here, Plaintiff's allegations show that he evacuated the mall on what turned out to be a false alarm, and that Defendants were unhappy that he did so, particularly because the incident occurred during the busy holiday shopping season. The allegations also show that the transfer occurred on the heels of this debacle, suggesting that Defendant transferred him because of his actions (whether or not it was his fault). But Plaintiff also alleges that the error was caused in part because of Defendant's failure to treat him like the other non-black security guards. Plaintiff alleges that he was the only black security guard working for Defendants during this time period; that only he was not informed about the malfunctioning fire alarm; that he followed instructions and was then investigated and punished in a way the other (non-black) security guards were not. Plaintiff alleges that he was treated differently because of his race. He need not show that race was the only

reason for Defendants' actions; rather, he need only show that race was a motivating factor. *Id.* citing *Hossack*, 492 F.3d at 860; *Bellaver*, 200 F.3d at 492. He has done so. Again, discovery may later undermine these allegations. But at this stage, the Court cannot say that Plaintiff has alleged facts establishing an impenetrable defense to his claim.

### 3. Allegations Specifically Concerning Hawthorn

Finally, Hawthorn argues that Plaintiff's complaint effectively alleges that PSC, not Hawthorn, is responsible for the conduct related to any adverse employment action. [41], p. 5. The Court disagrees.

Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). The Seventh Circuit has held that "multiple entities may be considered an employee's 'employer' for the purposes of Title VII liability." *Tamayo* 526 F.3d at 1088 quoting *Worth v. Tyer*, 276 F.3d 249, 259 (7th Cir. 2001). Additionally, an affiliated corporation may be considered an employer under Title VII, in addition to the direct employer, if the affiliate "directed the discriminatory act, practice, or policy of which the employee is complaining." *Tamayo* 526 F.3d at 1088 quoting *Worth*, 276 F.3d at 260. A defendant may also be considered a "de facto or indirect employer" if there is evidence that the defendant "controlled the plaintiff's employment relationship." *EEOC v. Illinois*, 69 F.3d 167, 169 (7th Cir.1995).

16

Here, Hawthorn contends that it cannot be held liable for discriminatory conduct related to the disciplinary proceedings alleged by the Plaintiff because Plaintiff directs these allegations to PSC and not Hawthorn. *See* [41], p 5. Hawthorn is correct that the complaint alleges that PSC employed Plaintiff, gave Plaintiff instructions on how to handle the fire alarm, failed to provide Plaintiff with any formal written or verbal disciplinary actions, interviewed Plaintiff twice about the fire alarm, and transferred him to another mall. *Id.*, p. 5-6. But, according to Plaintiff's complaint, Hawthorn also exercised at least some control over PSC's disciplinary proceedings in this instance. Plaintiff specifically alleges that individuals from PSC who interviewed him and conducted the disciplinary proceedings told him during the second interview that Hawthorn's Property Manager, Jeff Rutzen, was displeased with him and wanted Plaintiff to either resign or relocate. [38], ¶ 36, 40. This allegation indicates that Hawthorn was calling the shots as to PSC's handling of the matter. As a result, Hawthorn is plausibly responsible for the discriminatory conduct related to the disciplinary proceedings alleged by the Plaintiff, and the Court cannot dismiss Plaintiff's claim at this stage of the case. *See EEOC v. Illinois*, 69 F.3d at 169.

## Conclusion

For the reasons explained above, the Court denies Defendants' motions to dismiss [40], [42]. The status hearing previously set for 10:00 a.m., on October 25, 2017, stands, but the hearing will take place in Courtroom 1203. At that time, the parties should be prepared to set a case management schedule.

Dated: October 20, 2017

ENTERED:

_____
John Robert Blakey
United States District Judge